COMMISSIONERS OF HIGHWAYS, etc.,

v.

GEORGE D. GIBSON.

7   231
156s 164
7   231
87   99

1. PRACTICE IN MANDAMUS.—In mandamus the petition stands in the place of the alternative writ, and the answer takes the place of the return. The pleadings should then take the form of pleadings at law. To make up the issue as in a chancery proceeding, is an irregularity which, if objected to in apt time, would be ground for reversal.

2. BRIDGES BETWEEN ADJOINING TOWNS.—The proviso attached to section six of the Road and Bridge law, which provides for the building and maintaining of bridges over streams near county or town lines, in which both are equally interested, at the joint expense of each of such counties or towns, must be considered as meaning an interest ·arising from legal proprietorship existing in the two towns, growing out of the concurrent acts of the two boards of commissioners of highways, and not an interest arising from the proximity of such bridge to the dividing line between the towns, or an interest arising from the beneficial use of such bridge by the inhabitants of the two towns respectively

APPEAL from the Circuit Court of Tazewell county; the Hon. JOHN BURNS, Judge, presiding. Opinion filed October 7, 1880.

Mr. C. A. ROBERTS, for appellant; that it was error to submit the case to a jury under the state of the pleadings, cited The People v. Town of Waynesville, 88 Ill. 469.

There is no liability on the part of the adjoining town of Washington to contribute to the expense of the bridge: Mack v. Com'rs of Highways, 41 Ill. 378; Town of Rutland v. Town of Dayton, 60 Ill. 58.·

Prior to the act of 1872, the alternative writ stood in the place of a declaration: The People v. Mayor of Chicago, 51 Ill. 18; Garm v. Supervisor, etc., 51 Ill. 191.

But now the petition takes the place of the alternative writ: The People v. Glann, 70 Ill. 232.

The petition must show a clear right to the relief asked: The People v. Glann, 70 Ill. 232.

Mr. J. W. DOUGHERTY, for appellees.

McCULLOCH, P. J. This was a proceeding instituted in the circuit court to compel by mandamus the commissioners of highways of the two towns of Washington and Fondulac to re-build a bridge situate wholly within the territorial limits of the latter town. The pleadings consisted of the petition of appellee, the answers of the two towns, and a general replication, as in a cause in chancery. It is now objected that it was error to submit the case to a jury under this state of the pleadings, but as we are to decide it upon more substantial grounds, we deem it unimportant how the issues were made up. It may be proper, however to say, that under our present statute, the petition stands in the place of the alternative writ, while the answer thereto takes the place of the return. People v. Glann, 70 Ill. 232. The statute then provides that the plaintiff may plead to or traverse any or all material facts contained in the answer, to which the defendant can demur or take issue, and like proceedings shall thereupon be had as in other cases at law. R. S. 1874, ch. 87, § 4.

The making up of the issues, as in a chancery proceeding, instead of adopting the practice pointed out in the statute, was therefore an irregularity, which if taken advantage of in apt time, might in a proper case be a good cause for reversal. The People, etc. *ex rel.* v. Town of Waynesville, 88 Ill. 469.

This case, however, depends upon the alleged liability of the town of Washington, growing out of Section 106 of the Road and Bridge law of 1879, L. 1879, p. 208, R. S. 1880, ch. 121, § 106, which reads as follows:

" Bridges over streams which divide towns or counties, and bridges over streams on roads on county or town lines, shall be built and repaired at the equal expense of such towns or counties. Provided, That for the building and maintaining of bridges over streams near county or town lines, in which both are equally interested, the expenses of building and maintaining any such bridges shall be borne equally by both counties or towns."

The town of Washington is bounded on the west by Fondu-

lac, and on the south by the towns of Morton and Deer Creek. The initial point of the road on which the bridge in question is located, is in the southeasterly part of the town of Fondulac, whence it bears southeasterly until it strikes the dividing line between the two towns, which line it crosses at the distance of about one-half mile from their southern boundary. From this point it runs southeast and south for a distance of near two miles, when it strikes the south line of the town of Washington, which line it follows east, as a town line road, between Washington on the north, and Morton and Deer Creek on the south. It does not appear, nor do we understand it is claimed, that the commissioners of highways of the two towns have ever taken any joint action in regard to this bridge, but it is claimed that the two towns are equally interested therein, and, inasmuch as it has a location near the town lines that both towns are charged with the duty of keeping it up. The bridge is less than four hundred feet west from the town line, and there seems to be no question as to its being a public necessity. The question therefore is, whether or not, without any joint action of the two boards, the law casts upon the town of Washington the burthen of bearing an equal share in the maintenance of this bridge, with the town of Fondulac.

The purview of the section of the statute above quoted is very clear. It provides for two classes of cases: first, where a stream forms the boundary between two counties or two towns; secondly, where a road is laid out on a county or town line, and in its course crosses a stream, in each of which cases the bridges over such streams shall be built and repaired at the equal expense of such towns or counties. The stream in question does not form the boundary between the two towns, nor is the bridge on a road laid out on a town line, but the road crosses the town line nearly at right angles. The case, therefore, does not come within the meaning of this statute, unless the *proviso* so enlarges its scope as to embrace cases of this character. One of the objects of a proviso is to exclude some possible ground of misinterpreting the purview. Minis v. United States, 15 Pet. 423; Wyman v. Southard, 10 Wheat. 1–30; but it is to be construed strictly: U. S. v. Dickson, 15 Pet. 141;

and as affecting only the paragraph to which it is annexed: Spring v. Collector of Olney, 78 Ill. 101.

· We are not, therefore, to give this proviso the effect of enlarging the scope of the section wherein it is found, any further than to make that section conform to the general intendment of the whole statute.

By the 96th section of the same act it is enacted that public roads may be established on township or county lines, or from one township into another, in the same manner as other public roads, except that in such case the petition shall be presented to the commissioners of highways of each town interested, whereupon it shall be the duty of the commissioners of highways of the several towns to meet and act as one body, in the same manner as in other cases, and a majority of all such commissioners shall concur in any order made.

The following section (§ 97) provides that when a new road is laid out by such joint action, the commissioners shall allot to each of such towns the part of such road which such town shall open and keep in repair, and the part so allotted shall be considered as wholly belonging to such town. They shall also divide the expenses and damages which may accrue from such location.

Section 104 provides that all roads heretofore laid out upon town or county lines shall be allotted and kept in repair in the manner as before directed, and that any public road that is or shall be hereafter laid out on a county or town line shall be held to be a road on a county or town line, although, owing to the topography of the ground along said county or town line, or at the crossing of any stream of water, the proper authorities, in establishing or locating such road, may have located a portion of the same to one side of such county or town line.

These sections relate wholly to the locating, opening making and repairing of roads only, and have no specific application to bridges. That the legislature intended to keep up a distinction between the expenses of *making* and *repairing* roads, and those attending the building, and maintaining of bridges and other necessary expenses, is manifest; for, by section 16, the commissioners are authorized to assess a tax upon

real and personal property for the making and repairing of roads only, which tax by section 21 may be paid in labor upon the highways; while by section 119 they are authorized to levy a tax to be paid in money to provide for a much wider range of expenditures, including the building and repairing of bridges. It would therefore seem, that although for the purposes of making and repairing roads laid out upon town lines, it is the duty of the commissioners to allot certain portions thereof to each town, yet they are under no obligations to do so in regard to bridges in which two towns are interested, but these are left to be provided for in some other manner.

Having provided for the laying out of roads, and the making and repairing thereof on town lines, the statute proceeds to the subject of bridges in which two towns shall be interested. Section six provides that bridges over streams, which divide towns or counties, and bridges over streams on roads on county or town lines, shall be built and repaired at the equal expense of such towns or counties; to which section is added the proviso now under discussion, to the effect that for the building and maintaining of bridges over streams near county or town lines, *in which both are equally interested*, the expense thereof shall be borne equally by both counties or towns. Two elements enter into this proviso: first, the bridge must be near the line; secondly, both towns must be equally interested therein. The question then arises, what is the nature of that interest which will render both towns liable to maintain a bridge ?

Is it simply the benefit which the inhabitants of each town may derive from the use of the bridge when built, or is it a legal proprietorship existing in the two towns, growing out of the concurrent acts of the two boards of commissioners of highways? Section 107 provides that for the purpose of building or keeping in repair the bridges mentioned in section 106, it shall be lawful for the commissioners of adjoining towns to enter into joint contracts, while section 108 provides that if the commissioners of highways of either of such towns, after reasonable notice in writing from the commissioners of highways of

any other of such towns shall neglect or refuse to build or repair any such bridge when any contract or agreement has been made in regard to the same, it shall be lawful for the commissioners so giving notice to build and repair the same and to recover one-half the cost thereof from the delinquent board. The sections already quoted contain all the law that has been brought to our notice which in any manner authorizes the commissioners of highways to expend the taxes levied for road and bridge purposes outside the limits of their respective towns. They provide specific modes of procedure by which adjoining towns may became equally interested in a highway or bridge. Section 96 having provided that by the joint action of the two boards a highway may be laid out on a town line, section 106 provides that the bridges on such highway shall be built and repaired at the joint expense of the two towns.

Where such joint action cannot be had, there would seem to be nothing to prevent either town from laying the road wholly upon its own side of the line; but in such case it would hardly be contended that both towns were equally liable for the expense of building or repairing bridges along its course. So, in case of a stream forming a boundary between two towns, the commissioners may unite in the building of a bridge over the same; but where there is no contract or agreement to that effect, there seems to be no compulsory process provided by statute to enforce the duty. Rutland v. Dayton, 60 Ill. 58.

A ford or a ferry may well answer the purposes of a sparsely settled town, while on the opposite side of the stream might be located a populous city, whose necessities would demand a bridge. In such case it would be unreasonable to require the former to contribute equally with the latter to the building of a costly structure.

The statute has, for wise reasons, limited the power of highway commissioners to the making, building and keeping in repair the roads and bridges within their respective towns, except in certain specified cases, and we are to give such an interpretation to the proviso in question as will carry out rather than defeat the intent of the whole statute in that regard. By con-

Com'rs of Highways v. Gibson.

fining the proviso to that common interest which two towns may acquire in a road or bridge by way of ownership, or the right to exercise jointly the power of control or dominion over the same, we give effect to every part of the act without defeating it in any respect whatever. Section 104 provides that a road shall not be considered any the less a town line road, although owing to the topography of the ground along the line, or at any stream of water, the proper authorities, in establishing or locating such road, may have located a portion of the same to one side of the line. Now, if on that portion of the road which is located wholly on one side of the line a bridge should be required, a very strict construction of section 106, without the proviso, might throw the entire expense of building and maintaining such bridge upon the town in which it had its actual *situs*. To meet such an emergency and to exclude a too strict construction of the entire section, the proviso serves a wise purpose, and such in our opinion, is its only object and effect.

We do not mean to say that the above instance is the only one that may be reached by the proviso, but we must hold that it cannot extend the meaning of the section to which it is attached, so as to embrace cases other than those resting upon the concurrence of the several boards of commissioners of adjoining towns. Such matters are required to be made a matter of public record, and afford a safe rule of conduct for succeeding boards for all time.

Should we adopt the views of counsel for appellees, the statute would become an uncertain guide. If we were to hold that the words " equally interested " meant simply the proportion of benefits enjoyed by the inhabitants of the towns making use of the bridge, it would always be a matter of dispute whether the conditions existed which would render the towns equally liable; and in this particular instance it might well be said that the towns of Morton and Deer Creek are as largely interested as either of the other two, for the proof is that they enjoy the benefits of travel over this bridge fully as much as do either of the towns of Washington or Fondulac. And if this liability depended in any measure upon the nearness of

the bridge to the town line, then it must always be a matter of uncertainty just how far beyond the limits of their town the commissioners might go in building and repairing bridges jointly with other towns, or within what limits they might confine themselves without rendering the town liable for their neglect. For these reasons we must hold that the case now under consideration does not come within the provisions of the statute; that so far as shown by this record there is no liability resting upon the town of Washington to contribute towards the re-building of the bridge in question, and we therefore reverse the judgment of the circuit court.

Reversed.

DAVIS, J., dissenting.