SECOND DISTRICT—OCTOBER, 1910.        427

Stroud v. Commissioners of U. Drain. Dist., 157 Ill. App. 427.

Warren M. Stroud et al., Appellees, v. Commissioners of
Union Drainage District No. 1, Appellants.

## Gen. No. 5343.

1. MANDAMUS—*rules of pleading applicable to.* A mandamus pro-
ceeding is an action at law and is governed by the same rules of plead-
ing as are applicable to other actions at law. Therefore, such material
allegations of the petition as are not traversed by the defendant's plead-
ing are in contemplation of law admitted by the defendant to be true.

2. MANDAMUS—*when judgment requiring drainage commissioners to
build bridge not erroneous.* Held, that the judgment rendered in this
case was according to law in that it was sufficiently definite and did not
leave too much to the exercise of discretion by the commissioners.

3. DRAINAGE—*duty of commissioners to maintain bridges.* If a bridge
erected as provided by statute is destroyed, it is the duty of the commis-
sioners to repair it.

4. DRAINAGE—*what creates new obligation to bridge ditch.* Held,
that even though the statute of limitations had run in favor of the
drainage commissioners initially obligated to reconstruct a bridge over
a ditch, yet upon doubling the width of such ditch and upon· the deep-
ening thereof a new obligation to construct a bridge arose.

5. STATUTE OF LIMITATIONS—*what tolls running of as against drain-
age commissioners.* Promises by drainage commissioners to repair a
bridge which they were obliged to repair tolls the running of the statute.

*Mandamus.* Appeal from the Circuit Court of Whiteside county; the
Hon. FRANK D. RAMSAY, Judge, presiding. Heard in this court at the
April term, 1910. Affirmed. Opinion filed October 18, 1910.

A. C. BARDWELL and M. A. STIVER, for appellants.

C. L. & C. E. SHELDON and H. C. WARD, for appellees.

MR. JUSTICE DIBELL delivered the opinion of the court.

Appellees filed a petition in the court below for a *manda-
mus* to compel the commissioners of Union Drainage Dis-
trict No. 1 of the township of Hamilton in Lee county and of
the township of Hahnaman in the county of Whiteside to
erect a bridge across their drainage ditch to connect the
enclosed and tilled land of the petitioners on one side of

their ditch with their enclosed and tilled land on the other side of the same ditch, as provided by section 74 of the Farm Drainage Act, under which said District is organized, which is as follows: "There shall be constructed at least one bridge or proper passage way over each open drain where the same crosses any inclosed field or parcel of land, and the cost of construction thereof shall be charged as part of the cost of construction of such drain; and such bridge or passage way shall be maintained by the commissioners from the district funds; Provided, the commissioners may contract with owners of land crossed by such drain to maintain such bridge or crossing." The respondents filed two pleas, setting up the five years' statute of limitations, and made no other defense. The replications to said pleas were mislaid and were omitted from this record, but have been by agreement set out in appellee's brief, and were a general denial of the pleas. A jury was waived, proofs were heard and there was a judgment awarding the writ, from which the commissioners appeal.

A *mandamus* proceeding is an action at law and is governed by the same rules of pleading as are applicable to other actions at law; and therefore such of the material allegations of the petition as are not traversed by the defendants' pleading are in contemplation of law admitted by the defendants to be true. People v. Crabb, 156 Ill. 155. The pleas filed by the commissioners did not traverse any allegation of the petition. The commissioners make two contentions here: first, that the petition is barred by the statute of limitations; and second, that the form of the judgment is improper.

The petition shows that the commissioners dug this ditch, and that they built a bridge connecting the two sides of the enclosed lands of the petitioners which had been severed by the ditch, and that afterwards a flood wrecked the bridge and finally carried it away. The statute above quoted makes it the duty of the commissioners not only to erect a bridge under the circumstances stated, but also to maintain it, and it is clear that it was the duty of these commissioners to

rebuild the bridge.   The petition charges and the proof shows that the petitioners repeatedly urged and entreated the commissioners to rebuild the bridge, and that the commissioners never refused to do so and never denied their duty to rebuild it; but the proof shows that they excused delay on the ground that they expected the highway commissioners to lay out a road across or adjacent to this land and believed that they could share the expense of a bridge with the highway commissioners.   After the time when the commissioners now claim the statute had run, the petitioners had correspondence with the attorney for the commissioners, and his letter indicated that it was expected that the dredge would be put through the ditch again, and suggested that it would be better to delay building the bridge till after that was done; and that petitioners replied consenting to such delay.   In fact, thereafter and about two years before this suit was begun, the commissioners cut the ditch nearly double its former width through the lands of the petitioners and also made it deeper.   If there be any doubt that the promises and assurances of the commissioners prevented the statute from running against the right of petitioners to have the bridge over the old ditch restored, we cannot doubt that when the ditch was made double its former width and much deeper, a new right accrued to the landowners to have a bridge over this wider ditch.   If petitioners had lost their right to compel the commissioners to restore the old bridge, we presume it will not be doubted but that they could pass with their teams from the one piece of their land to the other by fording the old ditch, if that had been practicable, or by erecting a bridge across it at their own expense.   When the commissioners made the ditch one hundred feet wide, instead of fifty feet, and made it decidedly deeper and provided for more than double the flow of water therein, they made it extremely improbable that it could be forded, and they made it at least twice as expensive to build a bridge across it.   We are of opinion that when they created these new conditions, some two years before this suit was begun, a new right accrued to petitioners to have the com-

430     APPELLATE COURTS OF ILLINOIS.

Stroud v. Commissioners of U. Drain. Dist., 157 Ill. App. 427.

missioners bridge this channel. This is in harmony with the reasoning adopted in Commissioners v. Biggs, 134 Ill. App. 239, and in the same case, entitled People v. Commissioners, 231 Ill. 435.

The judgment awarded a writ commanding the commissioners forthwith to build a suitable bridge or passageway over said ditch of sufficient size, strength and capacity to afford the petitioners a reasonably safe passage across said ditch, and directed that it be west of a certain railroad right of way and connect the lands of the petitioners north and south of said ditch in certain named sections, and provided that if there was not sufficient money on hand with which to build the bridge the commissioners should levy an assessment, sufficient in amount to build it. This order left the precise location, of the bridge and its size and its cost to the sound judgment of the commissioners, only requiring that it connect the described lands and be of sufficient capacity to furnish the petitioners with a reasonably safe passage over the ditch, and we are of the opinion that it was proper to leave those matters to the official judgment and discretion of the commissioners. It is objected that it required the bridge to be built forthwith, whether there was any money on hand with which it could be immediately done or not, and also that, if there was not enough money to build a bridge, the commissioners should levy a tax for the whole cost of the bridge, even if they have on hand a considerable part of the money required to build it. We do not think the order should be so strictly construed. It means that the bridge shall be built as soon as the commissioners can build it; that, if they have enough money on hand to build it and which has not been raised for some other purpose, so that it can be lawfully used for this bridge, they shall build the bridge with that money; and if they have not enough money on hand available for that purpose, then they shall levy a tax for so much money as may be neccessary to build the bridge, in view of the present condition of the treasury; and if there is not money enough on hand to build the bridge, it does not require the commissioners to build the bridge until the money

has been obtained. Its reasonable meaning is that the commissioners shall proceed at once to do all things that may be necessary for the construction of the bridge. The commissioners knew the state of their treaury, and did not see fit to disclose to the court anything showing that any different order was needed for their protection.

The judgment is affirmed.

*Affirmed.*